THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GEORGE T. BRADT and ALBINA BRADT, Appellants, and DEWEY MITCHELL, Not a Party to This Appeal.

Rhodes, McNamee, Crapser and Bliss, JJ., concur; Hill, P. J., concurs in a memorandum.

Judgment of conviction of George T. Bradt modified by reducing the sentence to a minimum of one year and four months and a maximum of two years and

eight months as to each count, sentences as modified to run concurrently, and as so modified affirmed.

Hill, P. J., Rhodes and Crapser, JJ., concur; McNamee and Bliss, JJ., dissent as to the modification; Hill, P. J., and Crapser, J., would favor a greater reduction for each appellant if concurred in by a majority of the court; Rhodes, J., concurs in the reduction solely because of the recommendation by the jury.

The following is the memorandum rendered by Hill, P. J., upon the decision of appeal by Albina Bradt:

HILL, P. J. (concurring). George T. Bradt, county clerk of Schenectady county from 1907 to 1936, Albina Bradt, his sister-in-law, cashier of the motor vehicle bureau for nearly fifteen years, and Dewey Mitchell, clerk in that bureau since 1923, have been convicted of a violation of subdivision 1 of section 1865 of the Penal Law. The defendants were tried together, but only the first two have appealed. The statute under which the indictment was found reads:

" Misappropriation and falsification of accounts by public officers. A public officer, or a deputy, or clerk of any such officer, and any other person receiving money on behalf of, * * * or for or on account of any * * * county * * * who:

" 1. Appropriates to his own use, or to the use of any person not entitled thereto, without authority of law, any money so received by him as such officer, clerk or deputy, or otherwise; * * * is guilty of a felony."

It developed upon the trial that there were two types of misappropriation, actual felonious peculations of public moneys amounting to at least $20,000, taken apparently by the defendant Dewey Mitchell in relatively small amounts during several years, and an open and unsecretive borrowing of the county moneys in small amounts by the county clerk and at least eight of the employees in the office, including the defendants. The borrowings, which never exceeded $2,100 at any one time and were usually a much smaller amount, have all been repaid, according to the evidence of the defendants with no contrary proof. The defendant Albina Bradt, or Dewey Mitchell when he was in charge of the bureau during her absence, would loan county money from the till and take an I. O. U. for the amount. These were kept in an envelope and the aggregate figured as undeposited cash. These loans were repaid to the motor bureau when the borrowers learned of the impending investigation which later disclosed the large shortage, and the amounts were paid to the county treasurer by the defendant George T. Bradt. Persons who knowingly borrow public money from the custodian thereof, as well as the custodian who loans, violate the statute unless there is authority therefor found in the law, and this although there was no intent to steal the money, and it was repaid. Under this statute, no other intent is necessary than to do the forbidden act. (*People* v. *Marcus*, 261 N. Y. 268.) It was stated upon the argument and appears from the record that appellants have been indicted in connection with these "loans" but not yet tried under those indictments.

The indictment charged that the three defendants "with intent to defraud * * * feloniously, wrongfully, willfully, knowingly and criminally" appropriated money belonging to Schenectady county. Each of the eight counts charged the misappropriation during a single month of the difference between the amount belonging to the county which the motor bureau received and that

paid to the county treasurer by the county clerk. The months and amounts are: May and August, 1932, respectively, $1,849.32 and $259.20; April and May, 1933, respectively, $790 and $1,839.50; April and May, 1934, respectively, $783.05 and $1,368.40; May, 1935, $916.35; June, 1936, $665.60. The computation of the amount which the county should have received in each month was made from records preserved in the State Motor Bureau. (Mitchell had destroyed many of the county records.) As an example, in May, 1932, these records indicated that the county should have received $4,105.15, the county treasurer received $2,255.85. The count in the indictment which applied to that month charged the misappropriation of the difference between those amounts.

There was no evidence to connect either of these appellants with the felonious taking of the large and unrepaid deficit and an examination of the facts is necessary to determine if the open and unsecreted, but illegal, "loaning" of public funds is charged in the indictment. Albina Bradt ordinarily carried on all transactions with the public in connection with the motor bureau. At rush seasons she was assisted by Rose Treeza, another clerk. Very large sums of money were taken in at certain periods of the year from automobile and operators' licenses and learners' permits. Each item was recorded as paid by the applicant, upon an adding machine operated by Mrs. Bradt or Miss Treeza. Each day, and during rush periods several times a day, Mitchell took money from the cash drawer, made deposit slips and sent it to the bank. No discrepancy was ever found between the amount which should have been received from the licenses and permits issued and the receipts as shown by the adding machine slips, kept by Mrs. Bradt and Miss Treeza. Mitchell deposited money to the credit of the motor vehicle bureau and drew checks against the account. These were permitted to be drawn only to the State Automobile Bureau for the portion belonging to the State, and to the county clerk for the county's share (thirty-five cents on each automobile license and ten cents on each operator's license and learner's permit). As he received from Mrs. Bradt and Miss Treeza the full amount which was paid in from the licenses and permits issued, there would have been no shortage in State or county money if he had deposited it all. There was no delay or shortage in the payments to the State, and all the money which he checked over to the county clerk was in turn paid by Bradt to the county treasurer. From 1932 the large shortage which existed was covered by Mitchell by delaying payments to the county. The payments each month had no relation to the amounts received during that month. As time progressed and the deficit increased, the delay lengthened. As an example, on January 6, 1936, twenty-six checks were sent by Mitchell to Mrs. Murch, the clerk in the main office who had charge of receipts. The aggregate of these checks covered the month of October, 1935. A day or two later fifty-one more checks were sent to Mrs. Murch. These paid the county's share for the months of November and December, 1935. It was possible for Mitchell to make these payments to apply on overdue amounts because a large amount of money was received at the beginning of the year.

It is not to be gainsaid that the "loans" would cause a deficit in cash, and if there were unpaid I. O. U.s during the months mentioned in the indictment, the deficit was increased by their amount. There is no evidence to connect these appellants with the felonious peculations. Each admits the borrowing of money from the county, and Mrs. Bradt made the loans to others.

There is no proof that either of these appellants took any money with larcenous intent but each participated in increasing the amount of the deficit to the extent of the " loans." The participation by the defendant George T. Bradt consisted in permitting such a practice, as well as borrowing on his own account. There is no evidence to sustain the argument of the district attorney that some of the I. O. U.s were destroyed and thereby turned into peculations. Mitchell mentions the taking out of some of the I. O. U.s for a time, but he explicitly says he knew of none that were not paid. In view of the facts the sentence of each of these defendants is excessive. George T. Bradt received a much more severe sentence than Dewey Mitchell who feloniously took the amount of the shortage. Neither the State nor the county lost any money through the irregular practices of these appellants. Their offenses involved no moral turpitude. They each did things which the statute forbids and George T. Bradt was an inefficient executive. They are each technically guilty, and the indictment covers the offense. Under other circumstances, some of the errors would require that the judgments of conviction be reversed.

I favor an affirmance, but with a substantial reduction of each sentence. The jury recommended " that the maximum mercy in the power of the court be exercised " as to the defendant George T. Bradt. This was not adopted.